1

2

3

4

5

6

7

8              **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11   GUSTAVO MANCHA,                     )   1:13-cv-00632 GSA HC
                                          )
12              Petitioner,               )   ORDER DENYING PETITION FOR WRIT OF
                                          )   HABEAS CORPUS
13        v.                              )
                                          )   ORDER DIRECTING CLERK OF COURT TO
14                                        )   ENTER JUDGMENT
                                          )
15   PAUL COPENHAVER, Warden,             )   ORDER DECLINING ISSUANCE OF
                                          )   CERTIFICATE OF APPEALABILITY
16              Respondent.               )
                                          )
17   _____    )

18        Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus

19   pursuant to 28 U.S.C. § 2241.  The parties have consented to the jurisdiction of the Magistrate Judge

20   pursuant to 28 U.S.C. § 636(c).

21                                  **BACKGROUND**

22        Petitioner is in the custody of the Bureau of Prisons at the United States Penitentiary located in

23   Atwater, California, serving a sentence of 211 months pursuant to a judgment of the United States

24   District Court, Northern District of Florida, following his conviction for conspiracy to distribute and

25   possess with intent to distribute 5 kilograms or more of cocaine and possession with intent to distribute

26   500 grams or more of cocaine.  (Resp't's Answer, Ex. 1, Vickers Decl., at ¶ 3.)  Petitioner currently

27   has a projected release date of May 9, 2020, via good conduct time. (Id. at ¶ 4.)

28

                                         1

1         On May 2, 2013, Petitioner filed the instant petition for writ of habeas corpus in this Court.

2    Petitioner does not challenge his conviction, but a disciplinary proceeding in which he was found

3    guilty of tattooing and possession of anything unauthorized for which he was sanctioned with a loss of

4    27 days of good conduct credits.  Petitioner claims his due process rights were violated because the

5    evidence did not support the disciplinary hearing officer's decision.  On September 5, 2013,

6    Respondent filed an answer to the petition.  Respondent contends Petitioner failed to exhaust his

7    administrative remedies and procedurally defaulted.  He further alleges Petitioner's claim is without

8    merit.  On September 23, 2013, Petitioner filed a traverse.

9    **DISCUSSION**

10   I.  Jurisdiction

11        Writ of habeas corpus relief extends to a person in custody under the authority of the United

12   States.  See 28 U.S.C. § 2241.  While a federal prisoner who wishes to challenge the validity or

13   constitutionality of his conviction must bring a petition for writ of habeas corpus pursuant to 28 U.S.C.

14   § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must

15   bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  See, e.g.,  Capaldi v. Pontesso, 135

16   F.3d 1122, 1123 (6th Cir. 1998); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991);

17   United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Brown v. United States, 610 F.2d 672,

18   677 (9th Cir. 1990).  To receive relief under 28 U.S.C. § 2241 a petitioner in federal custody must

19   show that his sentence is being executed in an illegal, but not necessarily unconstitutional, manner.

20   See, e.g., Clark v. Floyd, 80 F.3d 371, 372, 374 (9th Cir. 1995) (contending time spent in state custody

21   should be credited toward federal custody); Jalili, 925 F.2d at 893-94 (asserting petitioner should be

22   housed at a community treatment center); Barden, 921 F.2d at 479 (arguing Bureau of Prisons erred in

23   determining whether petitioner could receive credit for time spent in state custody); Brown, 610 F.2d

24   at 677 (challenging content of inaccurate pre-sentence report used to deny parole).

25        In this case, Petitioner challenges the execution of his sentence.  Therefore, the Court has

26   jurisdiction to consider the petition pursuant to 28 U.S.C. § 2241.

27   //

28   //

II.  Venue

A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian.  Brown, 610 F.2d at 677.  Petitioner is in the custody of the Bureau of Prisons at the United States Penitentiary in Atwater, California, which is located within the jurisdiction of this Court.  28 U.S.C. §§ 2254(a); 2241(d).  Therefore, venue is proper in this Court.

III.  Exhaustion

A petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies.  Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir.1984).  It is only after a petitioner has fully exhausted his administrative remedies that he becomes entitled to present his claims to the federal court. See United States v. Mathis, 689 F.2d 1364, 1365 (11th Cir.1982).  In Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir.1983) (per curiam), the Ninth Circuit explained why a petitioner must first exhaust his administrative remedies before filing for habeas relief: "The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.  See also Chua Hah Mow, 730 F.2d at 1313.

However, the exhaustion requirement was judicially created; it is not a statutory requirement. Chua Han Mow, 730 F.2d at 1313; Montgomery v. Rumsfeld, 572 F.2d 250, 252 (9th Cir.1978). Because exhaustion is not required by statute, it is not jurisdictional.  Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.1987); Montgomery, 572 F.2d at 252.  "Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown, 895 F.2d at 535.

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. §§ 542.10 et seq.  First, an inmate must attempt to

1    resolve the issue informally by presenting it to staff before submitting a Request for Administrative

2    Remedy.  28 C.F.R. § 542.13.  If dissatisfied with the response, the prisoner may proceed with the

3    formal filing of an Administrative Remedy Request.  28 C.F.R. § 542.14.  Upon denial by the warden

4    of the institution, the prisoner may appeal the decision by filing a complaint with the Regional

5    Director of the Bureau of Prisons.  28 C.F.R. § 542.15.  The Regional Director's decision may be

6    appealed to the General Counsel in Washington, D.C.  Id.  Appeal to the General Counsel is the final

7    step in the administrative remedy process.  Id.

8           Respondent contends that Petitioner has failed to exhaust his administrative remedies.  He

9    states that Petitioner administratively appealed the disciplinary violation up to the third level, but the

10   appeal was rejected for having four illegible attachment sheets. (Resp't's Answer, Ex. 1, Vickers

11   Decl., at ¶ 11.)  The rejection notice advised Petitioner that he could resubmit his appeal within fifteen

12   days of the date of the notice.  (Id. at ¶ 11.)  Petitioner did not resubmit the appeal and therefore did

13   not exhaust his administrative remedies by completing the third level of review.  Therefore,

14   Respondent is correct that Petitioner has failed to exhaust his administrative remedies.

15          Respondent further claims that Petitioner's failure to exhaust amounts to procedural default.

16   Nigro v. Sullivan, 40 F.3d 990, 992 (9th Cir.1994), is instructive.  In Nigro, the petitioner failed to

17   timely file an appeal at the third level of review, just as Petitioner here failed to timely resubmit his

18   documents to complete the third level of review.  Id.  The Ninth Circuit determined that the untimely

19   appeal resulted in procedural default.  Id. at 993.  Therefore, Respondent is correct that Petitioner has

20   procedurally defaulted his claim.  This procedural default warrants dismissal of the claim.  Id.

21   IV.  Review of Petition

22          Respondent argues in the alternative that even if the Court were to consider the claim, it is

23   meritless since there was at least some evidence supporting the Discipline Hearing Officer's (DHO)

24   determination.

25          According to the report, the incident occurred as follows:

26       On 09/08/11 at approximately 11:30 p.m. I was stationed as the Unit 4 Officer.  While
         conducting rounds in Unit 4B I noticed the lights in cell 118 still on and loud voices
27       coming from the cell.  When I looked into the cell window, I saw inmate Mancha,

28

4

Gustavo #09489-196[1] standing next to inmate Martinez-Angulo, Martin #09489-196.
Inmate Mancha appeared to be giving inmate Martinez a tattoo on his upper right
shoulder.  I ordered inmate Mancha to place the tattoo gun and ink on the counter, he
complied.  Operations Lieutenant was notified.

(Resp't's Answer, Ex. 1, Cortez Decl., at ¶ 6.)

Petitioner was provided with a copy of the incident report on September 9, 2011.  (Id. at ¶ 8.)

Lieutenant Keller was assigned to investigate the charges.  (Id. at ¶ 9.)  Keller advised Petitioner that

he had a right to remain silent during all stages of the disciplinary process.  (Id.)  Petitioner stated he

understood his rights.  (Id.)  He refused to make a statement, and he declined to request any witnesses.

(Id.)  Keller concluded Petitioner had been properly charged and forwarded the incident report to the

Unit Disciplinary Committee ("UDC") for further action.  (Id.)

On September 15, 2011, the UDC hearing was held.  (Id. at ¶ 10.)  Petitioner stated to the

committee: "In the statement he said he [the reporting officer] caught us in the act.  That is a lie."  (Id.

at ¶ 10.)  The UDC concluded there was sufficient basis to refer the matter to the Disciplinary Hearing

Officer ("DHO") for hearing and possible sanctions. (Id. at ¶ 11.)  Petitioner requested the assistance

of a staff representative and indicated he did not wish to call any witnesses.  (Id. at ¶ 11.)  Petitioner

was advised of his rights at the disciplinary hearing.  (Id. at ¶ 12.)

On October 15, 2011, the disciplinary hearing was held before the DHO.  (Id. at ¶ 13.)

Petitioner was advised that the staff representative he requested was unavailable at that time and the

hearing could be postponed, but Petitioner opted to proceed without the benefit of a staff

representative.  (Id. at ¶ 14.)  Petitioner declined to call any witnesses.  (Id. at ¶ 15.)  He admitted to

the charge of "Possession of Anything Unauthorized" but denied the charge of "Tattooing."  (Id. at ¶

15.)  Petitioner made the following oral statement:

I was not tattooing him.  They took the TV's away that week, so we were up
late.  He was making his rounds peering in the window.  He came in and said for my
cellie to turn around.  When he saw the tattoo he freaked out.  He started asking for the
stuff.  The gloves were on my cellie[']s bed.  The gloves I get are clear.  In the picture
everything in [sic] clean.  If I was tattooing it would be dirty.  My third cellie was
freaking out about going to the hole so I gave the officer the stuff I had.

(Id. at ¶ 15.)

_____

[1] This is not Petitioner's correct inmate number.  The correct number is correctly reflected later in the incident report as
#06009-017. (Resp't's Answer, Ex. 1, Cortez Decl., at ¶ 7.)

1    The DHO concluded that Petitioner committed both of the charged violations.  (Id. at ¶ 16.)

2    The DHO considered the statement made by the reporting officer as well as Petitioner's denial of the

3    tattooing charge, but found the reporting officer to be more credible.  (Id. at ¶ 16.)  The DHO noted

4    that the reporting officer had nothing to gain by filing a false incident report, whereas Petitioner could

5    potentially avoid disciplinary sanctions by denying the charge.  (Id. at ¶ 16.)  The DHO also noted that

6    Petitioner failed to offer any facts or evidence in support of his denial.  (Id. at ¶ 16.)  The DHO further

7    considered the photo depicting a fresh tattoo on Inmate Martinez-Angulo's right shoulder as well as

8    the photo depicting the tattoo paraphernalia found in Petitioner's possession.  (Id. at ¶ 16.)

9    Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be

10   diminished by the needs and objectives of the institutional environment.  Wolff v. McDonnell, 418

11   U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a

12   prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's

13   due process rights are moderated by the "legitimate institutional needs" of a prison.  Bostic v. Carlson,

14   884 F.2d 1267, 1269 (9th Cir. 1989) (citing Superintendent, Mass. Corr. Inst., 472 U.S. 445, 454-455

15   (1984)).

16   When a prison disciplinary proceeding may result in the loss of good time credits, due process

17   requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary

18   charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call

19   witnesses and present documentary evidence in his defense; and (3) a written statement by the

20   factfinder of the evidence relied on and the reasons for the disciplinary action.  Hill, 472 U.S. at 454;

21   Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported by "some

22   evidence."  Hill, 472 U.S. at 455 (citing United States ex rel. Vatauer v. Commissioner of

23   Immigration, 273 U.S. 103, 106 (1927)).

24   In this case, Petitioner does not contend that he did not receive advance written notice of the

25   charges, an opportunity to call witnesses and present evidence, or a written statement of the decision.

26   He contends only that the evidence did not support the charged offense of tattooing.  Petitioner's

27   argument is without merit.  Applying the Hill standard, there was at least "some evidence" from which

28   to conclude Petitioner committed the charged offense.  472 U.S. at 455.  The reporting officer stated

1  he saw Petitioner standing next to Inmate Martinez-Angulo and appearing to tattoo his upper right

2  shoulder.  A photograph taken of Inmate Martinez-Angulo showed a fresh tattoo in the same upper

3  right shoulder area.  Petitioner admitted he was a tattoo artist, and he turned over his tattoo equipment

4  to the reporting officer.  Although Petitioner denied the offense, the DHO determined that the

5  reporting officer's account was more credible.  Based on the totality of the circumstances, the hearing

6  officer found Petitioner guilty of the offenses.  Petitioner fails to demonstrate that there was not at

7  least "some evidence" from which to conclude he committed the offenses.

8          In sum, all due process requirements were satisfied. The petition is without merit and should be

9  denied.

10  V.  Certificate of Appealability

11          A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district

12  court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-El v.

13  Cockrell, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a

14  certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

15          (a) In a habeas corpus proceeding or a proceeding under section 2255 before a
        district judge, the final order shall be subject to review, on appeal, by the court
16      of appeals for the circuit in which the proceeding is held.

17          (b) There shall be no right of appeal from a final order in a proceeding to test the
        validity of a warrant to remove to another district or place for commitment or trial
18      a person charged with a criminal offense against the United States, or to test the
        validity of such person's detention pending removal proceedings.

19
        (c)      (1) Unless a circuit justice or judge issues a certificate of appealability, an
20          appeal may not be taken to the court of appeals from–

21              (A) the final order in a habeas corpus proceeding in which the
            detention complained of arises out of process issued by a State
22          court; or

23              (B) the final order in a proceeding under section 2255.

24          (2) A certificate of appealability may issue under paragraph (1) only if the
        applicant has made a substantial showing of the denial of a constitutional right.

25
            (3) The certificate of appealability under paragraph (1) shall indicate which
26      specific issue or issues satisfy the showing required by paragraph (2).

27          If a court denies a petitioner's petition, the court may only issue a certificate of appealability

28  "if jurists of reason could disagree with the district court's resolution of his constitutional claims or

1  that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

2  further." Miller-El, 537 U.S. at 327; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the

3  petitioner is not required to prove the merits of his case, he must demonstrate "something more than

4  the absence of frivolity or the existence of mere good faith on his . . . part." Miller-El, 537 U.S. at 338.

5          In the present case, the Court finds that reasonable jurists would not find the Court's

6  determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

7  deserving of encouragement to proceed further.  Petitioner has not made the required substantial

8  showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a

9  certificate of appealability.

10                                           **ORDER**

11          Accordingly, IT IS HEREBY ORDERED:

12          1) The Petition for a Writ of Habeas Corpus is DENIED with prejudice;

13          2) The Court DECLINES to issue a certificate of appealability; and

14          3) The Clerk of Court is DIRECTED to enter judgment and close the case.

15

16

17

18  IT IS SO ORDERED.

19      Dated:    **November 5, 2013**                    **/s/ Gary S. Austin**
20                                                  UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28

8